## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NEFTEHIM BUNKER JSC**                          **CIVIL ACTION**

**VERSUS**                                       **NO: 14-2774**

**RIDGEBURY NICHOLAS A M/V**                     **SECTION: "H"(1)**

### ORDER AND REASONS

Before the Court are Cross Motions for Summary Judgment filed by Neftehim Bunker, JSC ("Neftehim") (Doc. 70) and ING Bank ("ING") (Doc. 71). For the following reasons, Neftehim's Motion is **DENIED** and ING Bank's Motion is **GRANTED IN PART** and **DEFERRED IN PART**.

### BACKGROUND

This case began as a vessel seizure case.  Koch Shipping, LLC, ("Koch") the time charterer of the M/V RIDGEBURY NICHOLAS, entered into a supply contract with the now-defunct O.W. Bunker Switzerland for a bunker supply. In order to fulfill its contractual obligation, O.W. Bunker contracted with its Danish affiliate, O.W. Denmark, who in turn contracted with Neftehim, who actually provided the bunker supply.  On November 5, 2014, Plaintiff Neftehim

1

supplied bunker fuel to the M/V RIDGEBURY NICHOLAS at the port of Ust-Luga, Russia. Because it was never paid for this bunker supply, Neftehim arrested the vessel in the Eastern District of Louisiana on December 8, 2014 pursuant to Supplemental Admiralty Rule C, contending that it holds a maritime lien on the vessel based on the supply of "necessaries" in the amount of $486,000 (the value of the bunker supply). After the Court ordered the vessel seized, Koch posted a bond to secure its release.

This case mirrors a situation that has occurred worldwide. O.W. Bunker was one of the world's largest bunker suppliers until its collapse and bankruptcy in 2014. This has spawned an avalanche of litigation related to O.W.'s failure to pay for bunker supplies. Typically, shipping companies (like Koch) would contract with O.W. Bunker for their bunker supply. In turn, O.W. Bunker would contract with entities (like Neftehim) who would physically supply the bunkers. When O.W. Bunker collapsed, the suppliers, such as Neftehim, were never paid for the bunkers they supplied.

In this case, Koch's vessel, the M/V RIDGEBURY NICHOLAS, was supplied pursuant to this type of arrangement. As previously noted, Neftehim filed this suit asserting a maritime lien on the vessel for the unpaid bunker supply, seeking $486,000. The vessel was released from arrest on a $729,000 bond. ING, who accepted assignment of O.W. Bunker's rights in the latter's dissolution proceedings, was taking steps to assert a $503,820 claim for the same bunker supply by arresting the same vessel in a different jurisdiction.

On December 31, 2015, Koch filed a motion seeking leave to assert a counterclaim for interpleader and injunctive relief against Neftehim, O.W. Bunker, ING Bank, and any other third parties. In order to avoid double payment for the same debt, Koch moved the Court to convert the vessel bond

2

into an interpleader bond and enjoin other suits regarding the same bunker supply. The Court granted this Motion. At this point Koch does not dispute that it owes the debt to someone, it is just unsure to whom. Neftehim and ING have filed cross motions for summary judgment, each arguing that it is entitled to claim a maritime lien for the same bunker supply.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that

---

[1] Fed. R. Civ. P. 56(c) (2012).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).
[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

These Motions seek to resolve who (if anyone) holds a maritime lien relative to the bunker supply.[9]  As a preliminary matter, the Court must determine the law applicable to Neftehim's claim.  Neftehim argues that the Court should apply the laws of the United States, which it argues grant it a maritime lien pursuant to the Commercial Instrument Maritime Lien Act (CIMLA).  ING contends, however, that Russian law should apply to Neftehim's claim.  Should Russian law apply, Neftehim does not have a maritime lien and the analysis of its claim ends there.  If, however, the laws of the United States are applicable to Neftehim's claim, the parties disagree as to whether ING is entitled to a lien under CIMLA.  ING claims that it, not Neftehim, is the proper party to assert a maritime lien relative to the bunker supply.

---

[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] This motion seeks to resolve the in rem claims relative the bunker supply.  ING Bank also asserts that it is entitled to in personam claims against Koch, and has filed a motion to compel arbitration of those claims.  The parties have agreed to postpone hearing on that motion pending the Court's ruling on the in rem claims, which potentially render the in personam claims moot.

**I. Choice of Law with Regard to Neftehim's Claim**

In its Motion, Neftehim asserts that the Court should apply the law of the forum to this dispute.  ING disagrees, asserting that the Court should conclude, through a more nuanced choice of law analysis, that Russian law applies to this claim.  The parties agree that if Russian law applies Neftehim may not claim a maritime lien.

Neftehim's argument with regard to choice of law relies on a line of cases involving the recognition of foreign judgments. First, it cites to the Second Circuit case of *D'Amico Dry Ltd. v. Primera Maritim (Hellas) Ltd.*[10]  There, the court considered whether admiralty jurisdiction applied in an action by a judgment creditor to enforce a judgment rendered by an English court.[11]  The judgment at issue was heard in the commercial division, not the admiralty division, of the English court.[12]  Nevertheless, the court found that the suit to enforce the English judgment fell within the U.S. court's maritime jurisdiction because the underlying claim would be deemed maritime under U.S. law.[13]  The court specifically noted that "[t]he question [of] whether a claim belongs in one or another court is jurisdictional and procedural.  Under choice of law principles, the law of the forum state is used for such a question."[14]  Neftehim also directs the Court to *Flame v. Freight Bulk Pte. Ltd.* a Fourth Circuit case wherein the court adopted the reasoning of *D'Amico* in answering a similar question.[15]

---

[10] 756 F.3d 151 (2d Cir. 2014).
[11] *Id.* at 153.
[12] *Id.* at 154.
[13] *Id.* at 162.
[14] *Id.* at 161.
[15] 762 F.3d 352 (4th Cir. 2014).

5

ING responds, arguing that the Court should apply the choice of law analysis set forth by the Fifth Circuit in *Gulf Trading & Transp. Co. v. Hoegh Shield*.[16]  In that case, the court began by noting that the Supreme Court, in *Lauritzen v. Larson,* first set forth a modern approach to maritime choice of law problems.[17]  The Court noted, however, that the *Lauritzen* test, articulated in the context of a Jones Act tort claim, does not neatly apply in maritime lien cases.[18]  Nevertheless, the court noted that *Lauritzen* was useful inasmuch as it established that "[m]aritime law . . . has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved.  The criteria, in general appear to be arrived at from weighing of the significance of one or more connecting factors between the shipping transaction regulated and the national interest served by the assertion of authority."[19] Accordingly, the court turned to the Restatement of Conflict of Laws for applicable principles.

With regard to the contract at issue, the court directed that the following factors should be considered: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[20]  In the broader

---

[16] 658 F.2d 363 (5th Cir 1981).

[17] 345 U.S. 571 (1953).

[18] Under *Lauritzen*, the Supreme Court directed courts to consider the following factors in maritime tort cases: (1) the place of the wrongful act, (2) the law of the flag, (3) the allegiance or domicile of the injured, (4) the allegiance of the defendant shipowner, (5) the place of contract, (6) the inaccessibility of a foreign forum, and (6) the law of the forum. 345 U.S. at 583.

[19] *Hoegh Shield*, 658 F.2d at 366.

[20] *Id.*

6

context of the maritime lien, the court looked to (a) the needs of the international system, (b) relevant policies of the forum, (c) relevant policies of other interested states, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in determination and application of the law to be applied.[21] ING also directs the Court to the Ninth Circuit case of *Gulf Trading Transp. V. M/V Tento*, wherein now-Justice Kennedy authored an opinion holding "that choice of law questions involving maritime liens are to be resolved by weighing and evaluating the points of contact between the transaction and the sovereign legal systems touched and affected by it."[22]

The Court finds that the appropriate analysis is the more complex choice of law analysis set forth in *Hoegh Shield* and *Tento*. The simplistic lex loci forum approach advanced by Neftehim, while appropriate in confronting procedural issues, is not dispositive to a choice of law issue where, as here, the question is whether to apply the substantive law of one forum or another. A review of the factual underpinnings of *Hoegh Shield* and similar cases is helpful prior to engaging in a choice of law analysis of the matter before the Court.

The *Hoegh Shield* court ultimately found that U.S. law applied to the transaction at issue, which involved bunkers furnished to a foreign vessel by an American supplier within the jurisdiction of the United States.[23] The court particularly noted that the congressional intent with regard to the Maritime Lien Statute is that "an American supplier of goods, services or necessaries to a foreign vessel obtains a maritime lien in the vessel when the goods or services

---

[21] *Id.*

[22] 694 F.2d 1191, 1195 (9th Cir. 1982).

[23] *Hoegh Shield*, 658 F.2d at 366

7

are supplied or performed in the United States."[24]  The Court also noted that it is reasonably expected that the Maritime Lien Statute would apply to protect a supplier when necessaries are furnished to a vessel by an American supplier in an American port.[25]  The court finally noted that the polices and interests of other governments favored the application of U.S. law.[26]  Though the contract was formed in Great Britain, the United States had a greater interest in protecting an American supplier of fuel to a non-English vessel in an American port.[27]

Conversely, in *Ocean Ship Supply Ltd. v. M/V Leah*, the Fourth Circuit applied the above factors to result in an application of foreign law. [28]  This case is similar to the matter at bar.  There, a Canadian corporation filed a complaint against a ship seeking payment for supplies furnished to the ship's previous owner.[29]  The supplies at issue were ordered by a non-American ship and furnished by a Canadian corporation in a Canadian port.  The plaintiff arrested the vessel in an American port, and argued that U.S. law relative to liens should apply to the matter.  Defendant argued that Canadian law, under which there would be no viable lien, should be applied.[30]  The court, citing *Hoegh Shield*, held that the choice of law factors pointed to an application of Canadian law.[31]  The court specifically noted that the dispute involved a Canadian corporation, a Canadian port, and a foreign ship.[32]  The mere fact that the

---

[24] *Id.* at 367
[25] *Id.*
[26] *Id.*
[27] *Id.* at 368.
[28] 729 F.2d 971, 973 (4th Cir. 1984).
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

vessel put in at an American port was "simply a fortuitous incident in the context of this litigation."[33]

Likewise, in *Dresdner Bank v. M/V Olympia Voyager*, the Eleventh Circuit also applied the *Hoegh Shield* factors to find that foreign law applied to a dispute.[34]  In that matter, the court had to decide whether U.S. law was properly applicable to govern a transaction between a Liberian ship owner and a Greek travel agency for travel services benefiting a Greek-flagged cruise vessel while it was in an American port.[35]  The court noted that, under the restatement analysis, the choice of law is largely determined by which sovereign entity has the most significant relationship with the transaction at issue.[36]  The court found that the place of contracting and negotiation was Greece, and the parties were domiciled in Greece and Liberia.[37]  The Court also found that the contract was performed in Greece when the plaintiff travel agency purchased tickets there. [38] The court therefore reversed the finding of the district court and held that Greek law applied to the matter before it.[39]

Turning to the matter at bar, the contractual choice of law factors militate in favor a finding that Russian law applies to this dispute.  These factors include (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. The contract at issue was negotiated and

---

[33] *Id.*

[34] 446 F.3d 1377 (11th Cir. 2006).

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

9

executed in Denmark and Russia, and the bunkers were delivered in Russia. The subject matter of the contract was a Russian delivered bunker supply, and the parties to the contract are Russian and Danish actors.  Though Koch, the defendant-ship owner in this matter, is a U.S. corporation, there is no evidence that Koch was a party to the contract or indeed that Neftehim was even aware of Koch's identity at the time the bunkers were delivered.  Furthermore, the vessel is a Marshall Islands flagged vessel.

The general choice of law factors likewise militate in favor of an application of Russian law.  These factors include (a) the needs of the international system, (b) relevant policies of the forum, (c) relevant policies of other interested states, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in determination and application of the law to be applied.  Factor (a) does not appear to be particularly relevant.  Factor (b) does not militate in favor of an application of U.S. law, as the congressional intent of the maritime lien statute is to protect an American supplier who supplies goods in an American port.[40]  Neftehim, a Russian supplier suppling goods in a Russian port, does not fall within the intended ambit of this protection.  Factor (c) militates in favor of Russian law, as Russia has an interest in governing transactions between its citizens and foreign companies that are performed within its territory.  Factor (d) weighs in favor of an application of Russian law, as Neftehim cannot reasonably have expected to claim an American maritime lien with regard to a transaction confected in Russian, performed in Russian, between Russian and Danish parties, to supply a Marshall Islands flagged vessel.  Factor (e) does not appear to be relevant.

---

[40] *Hoegh Shield* 658 F.2d. at  367.

10

Factor (f) leans against the law of the United States, as it would not lead to predictability or certainty to subject this transaction to U.S. law. Factor (g) is neutral, as the parties agree that if Russian law applies then Neftehim's in rem claim must fail.

Looking to the governmental interests involved, it is clear that the United States' interest in this dispute is minimal. Though the vessel at issue was chartered by an American company, the actual contract by which Neftehim supplied the bunkers involved no American party and no American vessel. It was not performed at an American port. Just as in *M/V* Leah, the fact that the vessel was seized in an American port is "simply a fortuitous incident in the context of this litigation."[41] The Court finds that Russian law applies to the Neftehim transaction, meaning that it acquired no maritime lien. Accordingly, Neftehim's in rem claims are dismissed.

## II. ING's Claim to a Maritime Lien

Because the Court finds that U.S. law does not apply, it need not consider the parties' argument relative to whether Neftehim may claim a maritime lien under CIMLA. The Court will, therefore, proceed directly to the arguments concerning whether ING may claim a maritime lien for the bunker supply pursuant to its assignment of O.W.'s rights. The state of the law in this area is far from clear. Indeed, courts nationwide have come to different conclusions on the same issue. The Court notes that in the case of *Valero Marketing and Supply Co. v. M/V Almi Sun,* a different section of this Court considered issues arising from the O.W. collapse that are similar to the matter at bar.[42] That

---

[41] *Id.*
[42] 160 F.Supp.3d 973 (E.D. La. 2016).

11

case is pending on appeal to the Fifth Circuit.[43]  The Court finds that the Circuit's disposition of that matter will likely provide meaningful guidance as to the resolution of ING's in rem claims.  Accordingly, the Court will defer ruling on that issue until such a time as the Court of Appeals issues its ruling. Because the resolution of the in rem claims is potentially dispositive of this entire matter, this case is stayed and administratively closed, subject to the right of any party to move to reopen the case following the Court of Appeals' ruling in the above referenced matter.

## CONCLUSION

For the foregoing reasons, Neftehim's Motion is **DENIED** and ING's Motion is **GRANTED IN PART** and **DEFERRED IN PART**.  This matter is **STAYED AND ADMINISTRATIVELY CLOSED** pending the ruling of the Fifth Circuit in *Valero Marketing and Supply Co. v. M/V ALMI SUN*.

New Orleans, Louisiana this 9th day of November, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[43] *Valero Marketing and Supply Co. v. M/V Almi Sun*, No. 16-30194 (5th Cir. filed March 7, 2016).